### FACTS PREFERABLE TO EXPERT TESTIMONY.

Circuit Court of Guernsey County.

THE WILLS CREEK COAL COMPANY v. MARY JONES,
ADMINISTRATRIX.

Decided, November Term, 1907.

*Negligence—Evidence as to Facts Existing at Time of the Accident—
Should be Given to the Jury in Preference to Expert Testimony,
When.*

Where it is practicable to place plainly before the jury the facts and
circumstances surrounding a claimed defect in the roof of a coal
mine, it is error to permit an expert to testify, "that if the fire
boss had gone through the entry before the men went to work and
used ordinary care in the inspection of the roof, he would have dis-
covered the fact that the roof was dangerous and liable to fall."

*Robert S. Scott,* for plaintiff in error.
*James Joyce,* for defendant in error.

COOK, J.; BURROWS, J., and LAUBIE, J., concur.

Error to Guernsey Common Pleas Court.

John R. Jones, the husband of the testatrix, defendant in
error, was killed in the mine of plaintiff in error by the falling
of slate from the roof in an entry. Two grounds of error are
urged:

First. The verdict is against the weight of the evidence as
to the question whether or not the company was guilty of negli-
gence and as to whether or not plaintiff's intestate was guilty
of contributory negligence.

Second. Improper evidence was admitted by the court.

As to the first ground it is sufficient to say that we have ex-
amined the evidence carefully and we do not think the claim of
plaintiff in error is correct, and we would not reverse the judg-
ment upon the ground of the insufficiency of the evidence.

The second proposition is attended with more difficulty. One
of the important questions in the case was whether or not
Latchney, the fire boss, whose duty it was to examine the

roof of the entry, to see if it was in a reasonably safe condition, had properly performed that duty. Latchney had testified he had examined the roof on the morning of the day Jones was killed.

A witness by the name of Kackley was called, who testified that he had been a miner for many years and showed that he was qualified to give an opinion as to the duties of a mine boss, and thereupon this question was asked him: ·

"Q. Now, I believe you told before what the duties of a mine boss were. A. Yes, sir.

"Q. In that mine, Mr. Kackley, by your experience as a coal miner, if the fire boss had gone through Entry 53 that morning and had used ordinary care in the examination and investigation of that roof at the place where Jones was killed, tell the jury whether or not it would have disclosed the fact that the roof at that time and at that point was dangerous and liable to fall?"

To this question there was an objection and exception and the witness was permitted to answer that it would.

And to another witness of the same character the question was asked:

"Now, John, by your experience as a coal miner, if the fire boss of that mine had gone through the Entry 53 that morning, and had used ordinary care in the examination and investigation in the roof in that entry at the place where Jones was killed, would it have disclosed the fact that the roof was dangerous and liable to fall?"

To this there was also an objection and exception and the witness was permitted to answer, "Yes, sir."

There was no difficulty in showing the condition of the roof. Indeed it was shown that there was a crack in it; that siftings of slate, rock and other materials were on the floor of the entry, immediately below where the crack was and other matters indicating that the roof was faulty and imperfect. That being so, whether or not it was dangerous and liable to fall and whether or not the fire boss by proper inspection would or should have discovered that fact, seems to us was entirely a question for the

jury to determine and not the witness. In fact it was the important question in the case. The act of the fire boss (Latchney) not discovering the dangerous condition of the roof and its liability to fall, if he made the inspection as he claimed he did, was the real ground of negligence on the part of the company, relied upon.

As we have already said, there was nothing particularly hidden or deceptive about the roof, and the means of proper examination upon the part of the fire boss had been fully explained to the jury.

In the case of *Railroad Company* v. *Schultz*, 43 O. S., 282, 283, in the opinion by Welch, C. J., in which the question of expert testimony is exhaustively considered, it is said:

"In such cases the witnesses are required, so far as may be, to state the primary facts which support their opinions.

"Where it is practicable to place palpably before the jury the facts supporting their opinions, the witnesses should be restricted in their testimony to such facts, and the jurors left to form their opinions from these facts, unaided by the mere opinions of the witnesses.

"As the warrant for the admission of the opinions of witnesses as evidence is found in some exception to the general and very salutary rule which requires that only facts be stated to the jury, it is the duty of a reviewing court to see that the admission of mere opinions as evidence was within some one of the established exceptions to such general rule; and where it does not appear upon the whole record but that the jury was equally capable with the witnesses of forming an opinion from the facts stated, it is error to admit in evidence the opinions of witnesses."

In Rogers on Expert Testimony, pages 15 and 16, it is laid down:

"Whether this or that act amounts to negligence is ordinarily a matter of judgment and common experience rather than of science or skill, and the opinions of experts are inadmissible in evidence concerning the same. An expert may be asked whether certain things were properly or skillfully done, but not whether a person was guilty of want of ordinary care or of negligence in doing of such things. The witness can not be asked whether a

person exercised due care; nor whether a person was a careful driver; nor 'is that the ordinary, careful, prudent, and safe manner (of performing the service)'; nor 'what would be the chances for a stage coach to tip over, being driven by an ordinarily careful, prudent driver'; nor whether the practice of a certain railroad in blowing its whistle was 'reasonable or unreasonable,' 'prudent' or 'extraordinary,' or 'an unreasonable manner of proceeding on the part of the engineer'; nor whether leaving a horse unhitched in a mill yard 'was the act of a careful and prudent man'; nor whether placing wet staves on the outside of an arch with fire in it 'was a safe and prudent way to dry them'; nor whether the plaintiff could have been injured in oiling a certain part of the machinery of a steam engine if he had not been careless; nor whether the means of egress from a building were all that due care required the defendant to provide; nor whether certain goods 'were as well handled and cared for as goods usually are when attached.'

"And so it has been held that while a physician might state what, in his opinion, was the cause of a certain hemorrhage, yet it was not competent for him to say whether it was to be attributed to the party's negligence. It has been held, too, that the opinion of a witness was inadmissible that it was not prudent to use a certain hoisting apparatus with less than three men, on a stone of two tons' heft. In the case last cited the court says: 'When this machine was fully described as to its structure, strength, methods of use, number of men required, danger in its use by less number, its safety and adequacy when properly used, the inference as to the prudence of undertaking to operate it on a stone of the size in question with only two men, was one which required no particular knowledge and skill, but rested in the sound judgment of the jurors, and one which they could as well decide for themselves.'

"In a case where it was claimed that a railroad company had been guilty of negligence in not removing certain brasses from the boxes of car wheels, it was held improper to ask an expert 'when ought they to be removed?' The court says: 'We think, however, that the proposed fact is not competent to be established by the opinion of a witness offered as an expert. The effects of allowing the brasses to become worn and thin and broken should be shown. Then the jury would be competent to determine whether it was negligence to fail to remove them before such condition existed. To allow a witness to testify as an expert to such fact would be to substitute the witness for the jury.'"

It is said that if this evidence was improperly admitted, yet it was not prejudicial. We do not think so. It had a strong bearing upon the case in many respects, especially one. One witness testified he informed the fire boss, Latchney, several days before it fell that the roof was in bad condition. Latchney testified he never told him so. He further testified he had no knowledge of the condition of the roof before it fell, although he examined it that morning of the accident. The evidence therefore tended to contradict the fire boss that he examined the roof, as was his duty to do each morning before the men went to work. In addition, it would have a telling effect upon the jury as to the knowledge of the fire boss.

Evidence of the same character was also admitted for the purpose of showing that Jones was not guilty of contributory negligence. So-called experts were asked "if a miner exercising ordinary care in going through the entry attending to his own work would have seen the defect in the roof."

What we have said upon the other branch of the evidence admitted applies with equal force to this evidence.

The judgment of the common pleas court is reversed for the admission of incompetent evidence and the case remanded for a new trial.